502 A.2d 522

**Erwin L. GREENBERG, et al.**

v.

**The STATE of Maryland.**

**No. 381, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Jan. 10, 1986.

Certiorari Denied March 24, 1986.

Warren K. Rich (Richard E. Rich, Lester O. Brown, and Niles, Barton & Wilmer on brief), Annapolis, for appellants.

Andrew H. Baida, Sp. Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Diana G. Motz, Peter E. Keith, Janis Ashman and Peter W. Taliaferro, Asst. Attys. Gen. on brief), Baltimore, for appellee.

Argued Before WILNER, WEANT, and KARWACKI, JJ.

KARWACKI, Judge.

This appeal is from a summary declaratory judgment entered by the Circuit Court for Anne Arundel County in favor of the State of Maryland and the State Aviation Administration of the Department of Transportation (hereinafter "the State" or "the appellees"). Erwin L. Greenberg, Alvin M. Lapidus, Lois Lapidus, Tevis Margolis, and Sylvia Margolis (hereinafter "the landowners" or "the appellants") filed this action against the State seeking declaratory and equitable relief. They alleged that their undeveloped property, located within the Baltimore-Washington International Airport (BWI) noise zone, had been "taken" by the State for public use without just compensation as a result of the application of the State airport noise zone regulations and the refusal by the Board of Airport Zoning Appeals to grant a variance permitting the use of the property for residential purposes. The appellants requested the court to declare that the "taking" of their property without just compensation is unconstitutional under the Fifth and Fourteenth Amendments of the United States Constitution and under Article III, Section 40 of the Maryland Constitution.

The 14.496 acre parcel of land which is the subject of this dispute is located near Crain Highway in Glen Burnie, Anne Arundel County, approximately one mile south of the North Arundel General Hospital and southeast of BWI. It lies within a 65–70 Ldn [1] noise zone. Maryland Code (1977, 1985 Supp.), § 5–801 through 5–823 of the Transportation Article [2] authorize the State Aviation Administrator to adopt

---

**1.** Ldn is the annual day-night sound level in decibels, resulting from annual average daily traffic and use of runways and flight paths, affecting a location in the neighborhood of an airport. COMAR § 11.03.03.01 A(1).

**2.** All further statutory references will be to this Article of the Code unless otherwise indicated.

noise zones in areas surrounding airports licensed by the Administration and to promulgage regulations governing land use therein. The regulation applicable to properties lying within a 65–70 Ldn noise zone, COMAR § 11.03.03.03, stipulates that residential development is prohibited. The same regulation, however, permits use of such property for hotels, motels, sports arenas, outdoor spectator sports, playgrounds, neighborhood parks, golf courses, riding stables, water recreation, cemeteries, office buildings (personal, business, and professional), commercial (retail or wholesale, movie theatres, restaurants, industry), manufacturing utilities, manufacturing, communications, livestock farming, agricultural purposes, mining, fishing, and aviation-related purposes.

In addition to the State noise zone regulations, the landowners' property is also subject to use restrictions imposed by the Anne Arundel County zoning ordinance. Anne Arundel County Code § 13–309. Under that zoning, the property is located in an R–22 Medium Density Multi-Family District, which permits use for apartments, apartment hotels, golf courses, libraries, museums and similar institutions of a noncommercial nature, private educational institutions, professional offices, certain restaurants, taverns and lounges, rooming houses, and certain swimming pools. Thus, as affected by both the State noise zone regulations and the Anne Arundel County zoning, the landowners' property is restricted to use for apartment hotels, golf courses, professional offices, restaurants, taverns and lounges, rooming houses, and swimming pools.

In October of 1982, the appellants entered a contract to sell the subject property to Harkins Associates, Inc. (hereinafter "Harkins") contingent upon Harkins's ability to build apartments thereon. Harkins's October 19, 1982 application for a building permit required by § 5–821 was denied by the State Aviation Administration because the property was located in a 65–70 Ldn zone. Thereafter, Harkins applied to the Board of Airport Zoning Appeals, established under § 5–506, for a variance from the noise zone regulations

pursuant to § 5–822 which was denied on January 14, 1983. The Circuit Court for Anne Arundel County affirmed the Board's decision on August 31, 1983, finding that reasonable uses were available for the property under the regulation applicable to its noise zone.[3]

On June 20, 1984, the appellants filed a Petition for Declaratory Judgment and Ancillary Equitable Relief followed by two amended petitions. The appellants asserted that the Airport Noise Program effectuated a "taking" of their property for public use without just compensation in violation of the Fifth Amendment of the United States Constitution (as applied to the states via the Fourteenth Amendment) and Article III, §§ 40–40D of the Maryland Constitution. Following a hearing on December 17, 1984, the State's motion to dismiss based on *res judicata* and failure to exhaust administrative remedies was denied.

A third amended petition was filed by the appellants containing two counts:

(1) alleging that the Airport Noise Control Program "took" their property for public use without just compensation in violation of the Fifth Amendment of the United States Constitution and Article III, §§ 40–40D of the Constitution of Maryland; and

(2) charging that since the airport noise zone regulations diminished the value of the property, and since the program was enacted by the State pursuant to and in the exercise of its eminent domain powers, the State was required to compensate the landowners for the "taking."

Again, the State moved to dismiss or, alternatively, to be granted summary declaratory judgment. Following a hearing on February 7, 1985, Judge Lerner granted the Summary Declaratory Judgment from which this appeal was taken.

---

3. In the matter of the Application of Harkins's Associates, Inc. for a variance from Airport Noise Zone Regulations, Law No. 1105667 (hereinafter "Harkins decision").

The appellants raise three issues for our determination. They argue that:

(1) the circuit court's action granting summary judgment in favor of the State based upon the pleadings was improper;

(2) the appellants were inappropriately precluded from showing the relationship between the airport noise zone regulations and the governmental enterprise; and

(3) the airport noise zone regulations as applied have resulted in an unconstitutional taking of the appellant's property for public use without just compensation.

In addition to taking issue with these arguments, the State urges that the appellant's action was barred by *res judicata*. It will not be necessary to resolve this assertion because, as a matter of law, we find from the pleadings that there was not an unconstitutional taking.

1.

■ As a preliminary matter, we are satisfied that the court's disposition of this case upon a motion to dismiss was appropriate under Rule 2–322, dealing with motions to dismiss for failure to state a claim. Where the contentions of parties to a declaratory judgment proceeding reveal no dispute as to any material fact rendering the issue drawn by the pleadings one of law, summary judgment is appropriate. *Carroll County Educational Association v. Board of Education*, 294 Md. 144, 448 A.2d 345 (1982); *Baltimore Import Car Service and Storage, Inc. v. Port Authority*, 258 Md. 335, 265 A.2d 866 (1970); *Hunt v. Montgomery County*, 248 Md. 403, 237 A.2d 35 (1968). In such a case the court may treat the motion to dismiss as one for summary judgment pursuant to Rule 2–501. In the case *sub judice* the issue drawn by the pleadings, when read in a light most favorable to the appellants, raised no issue of fact material to the resolution of the dispositive legal issue. The appellants alleged that the combined effect of the

State's airport noise zone regulations and the Anne Arundel County zoning ordinance was to "severely diminish" the value of their property. Based upon that premise, they argued that their property has been unconstitutionally taken without compensation even though they have not been deprived of all beneficial use of their land. In the trial court and here, the State conceded the factual premise for the appellants' assertion.

Persuasive on this question are decisions of the U.S. District Court for Maryland dismissing under Rule 12(b)(6) of the Federal Rules of Civil Procedure claims of unconstitutional "taking" of property. Niemeyer and Richards, *Maryland Rules Commentary* 146–151 (1984). One such case involved a developer who sought to develop a residential subdivision on his property in Queen Anne's County. *Kent Island Joint Venture v. Smith*, 452 F.Supp. 455 (D.Md.1978). The developer asserted that his federal constitutional rights had been violated because state and local officials interfered with his plans. He claimed that governmental actions with regard to a subdivision moratorium, percolation standards, and water and sewage requirements had led to an unconstitutional "taking" of his property because he was unable to complete his residential subdivision. The court dismissed the "taking" claims pursuant to a 12(b)(6) motion. It held:

> Although governmental interference by regulation of the use of private property can constitute a *de facto* or constructive taking, there is no taking in the constitutional sense unless the interference is so substantial as to render the property worthless or useless. It is not enough that the regulation deprives the property owner of the most profitable use of the property, or that the regulation causes a severe decline in the property's value. In *Hadacheck v. Sebastian*, 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 (1915), a decline in value from $800,000 to $60,000 was found by the Supreme Court to be insufficient to constitute a taking. Before a court can conclude that there has been an unconstitutional taking of proper-

ty, the government regulation must deprive the landowner of all reasonable uses of his land. Plaintiff has done no more than allege that the actions of the defendants have deprived it of the "most reasonable" use of its property and have resulted in "substantial decrease" in the property's value. These allegations are clearly insufficient to establish a taking in the constitutional sense.

This Court is satisfied that the acts alleged do not constitute a "taking" within the constitutional sense which would permit claims to be asserted in this suit against these defendants.

*Kent Island Joint Venture, supra* at 460.

Similarly, in *Smoke Rise, Inc. v. Washington Suburban Sanitary Commission,* 400 F.Supp. 1369 (D.Md.1975), a case decided upon the defendant's Rule 12(b)(6) motion to dismiss, the court addressed the validity of a "taking" claim, noting "[t]hough the value of the tract has been decreased considerably, it is not worthless or useless so as to constitute a taking." *Smoke Rise, Inc., supra* at 1383. The claim was dismissed. Likewise, in *Chesapeake Bay Village, Inc. v. Costle,* 502 F.Supp. 213 (D.Md.1980), the court again dismissed a "taking" claim upon a Rule 12(b)(6) motion since the allegations failed to satisfy the "all beneficial use" standard. Judge Miller repeated the well-established principle that in order to state a claim of unconstitutional "taking":

[A] plaintiff must show that the state's interference with his property has effectively deprive[d] the owner of all or most of his interest in the property; and

[T]he fact that a person is unable to make the most desirable or profitable use of its property does not mean that there has been a taking. (Citations omitted).

*Chesapeake Bay Village, Inc., supra* at 226–27. *See also Hagerstown Kitchens v. Board of County Commissioners of Washington County,* 547 F.Supp. 46, 48 (D.Md.1982), *aff'd mem.,* 707 F.2d 506 (4th Cir.1982).

### 2. and 3.

■ We turn now to the resolution of the crucial issue herein: whether the governmental action involved constituted a "taking" in exercise of the power of eminent domain, or rather a regulation under the State's police power. Generally, zoning ordinances, which restrict the use of property and cause reduction in value, are not "takings" if they substantially advance legitimate state interests and do not "extinguish a fundamental attribute of ownership." *Agins v. Tiburon*, 447 U.S. 255, 262, 100 S.Ct. 2138, 2142, 65 L.Ed.2d 106 (1980). In determining whether the enactment of the zoning ordinances constituted a "taking" Justice Powell explained:

> The determination that governmental action constitutes a taking is, in essence, a determination that the public at large, rather than a single owner, must bear the burden of an exercise of state power in the public interest. Although no precise rule determines when property has been taken, see *Kaiser Aetna v. United States*, 444 U.S. 164 [100 S.Ct. 383, 62 L.Ed.2d 332] (1979), the question necessarily requires a weighing of private and public interests. The seminal decision in *Euclid v. Ambler Co.*, 272 U.S. 365 [47 S.Ct. 114, 71 L.Ed. 303] (1926), is illustrative. In that case, the landowner challenged the constitutionality of a municipal ordinance that restricted commercial development of his property. Despite alleged dimunition in value of the owner's land, the Court held that the zoning laws were facially constitutional. They bore a substantial relationship to the public welfare, and their enactment inflicted no irreparable injury upon the landowner. *Id.* at 395–397 [47 S.Ct. at 121].

*Agins, supra* at 260–61, 100 S.Ct. at 2141.

In this case, the noise zone regulations substantially advance legitimate governmental goals. Noise pollution, like air pollution, is a matter over which the State has a legitimate concern. *Department of Transportation v. Armacost*, 299 Md. 392, 474 A.2d 191 (1984). The regulations at issue are an exercise of the State's police powers to

protect the public from harmful airport noise, applicable on a statewide basis to all airports licensed by the State Aviation Administration. The legislative purpose specifically set forth in the statute is to:

(1) Provide a positive basis for abatement of existing noise problems in communities near airports and to prevent new noise problems; and

(2) Protect the health and general welfare of the occupants of land near airports.

Section 5–802.

The Court of Appeals observed in *Bureau of Mines v. George's Creek*, 272 Md. 143, 166, 321 A.2d 748 (1974):

[T]he police power of the State includes everything essential to the public health, morals and safety. And beyond this, the State may interfere whenever the public welfare demands it, a large discretion necessarily being vested in the Legislature to determine what the welfare of the public requires and what measures are necessary for the promotion of the public welfare.

In *Md.-Nat'l Cap. P. & P. Comm'n v. Chadwick*, 286 Md. 1, 8, 405 A.2d 241 (1979), the Court noted:

The power of the state over private property extends from the regulation of its use and enjoyment under the police power, to its actual appropriation under the eminent domain power upon payment of just compensation. The distinction between the two governmental powers is an important one because a taking for public use without compensation can be corrected by payment, while a governmental action that violates due process requirements may be invalidated, without regard to whether compensation is provided. Our cases have recognized and applied the distinction between a compensable taking under the eminent domain power and a noncompensable regulation under the police power. *See, e.g., Governor v. Exxon Corp.*, 279 Md. 410, 423–38, 370 A.2d 1102 (1977), *aff'd*, 437 U.S. 117 [98 S.Ct. 2207, 57 L.Ed.2d 91] (1978); *Bureau of Mines v. George's Creek*, 272 Md. 143, 165–66,

321 A.2d 748 (1974); *Rockville Fuel v. Gaithersburg,* 266 Md. 117, 127–28, 291 A.2d 672 (1972); *Stevens v. City of Salisbury,* 240 Md. 556, 563–66, 214 A.2d 775 (1965). We have consistently upheld regulations which may have, as an incidental effect, the diminution of value of property, so long as those regulations have been shown to be fair exercises of the police power. *See, e.g., State Dep't of A. & Tax. v. Clark,* 281 Md. 385, 380 A.2d 28 (1977); *Mont. Co. v. Woodward & Lothrop,* 280 Md. 686, 376 A.2d 483 (1977), *cert. denied sub nom. Funger v. Montgomery County,* 434 U.S. 1067 [98 S.Ct. 1245, 55 L.Ed.2d 769] (1978); *Bureau of Mines v. George's Creek, supra; City of Annapolis v. Anne Arundel Co.,* 271 Md. 265, 316 A.2d 807 (1974); *Arnold v. Prince George's Co.,* 270 Md. 285, 311 A.2d 223 (1973); *Potomac Sand & Gravel v. Governor,* 266 Md. 358, 293 A.2d 241, *cert. denied,* 409 U.S. 1040 [93 S.Ct. 525, 34 L.Ed.2d 490] (1972); *Baltimore City v. Borinsky,* 239 Md. 611, 212 A.2d 508 (1965). A regulation which prohibits a beneficial use of private property constitutes a fair exercise of the police power if the public interest generally requires it and the regulation is reasonably necessary to achieve the public goal without being unduly oppressive upon individuals. *Potomac Sand & Gravel v. Governor, supra.*

We perceive no merit in the appellants' assertion that the Legislature abused its discretion in concluding that noise pollution attendant to airport operations within the State poses a threat to the public health and welfare of residents of the State and requires regulation.

We also reject the appellants' contention that since the noise zones are necessarily dictated by the volume of air traffic at BWI, a state owned airport, that imposition of those zones cannot be justified under the police power. We do not find *McShane v. City of Faribault,* 292 N.W.2d 253 (Minn.1980), relied on by the appellants, persuasive in this case. In *McShane,* a municipality enacted an ordinance limiting the use of property located under the flight paths established for its municipal airport. The limitations re-

stricted height of structures as well as the commercial and residential use thereof. The Minnesota Court held that since the sole purpose of the municipal ordinance was to benefit a municipal enterprise, that the owners of property affected by the ordinance were not required to establish that they had been deprived of all reasonable use before they were entitled to compensation. Rather, the court held that they were entitled to be compensated for the measurable decline in the market value of their property. The noise zone regulations in the instant case are materially different. They were enacted as part of a legislatively mandated program of statewide application aimed at abating and monitoring harmful noise emanating from airports. Airports, whether state owned or privately operated, come within their reach.

Understandably, the appellants would like to maximize the profits they might expect to make by developing their land in a residential manner. Undoubtedly, the noise zone regulations *sub judice* have restricted the development and affected adversely the value of that property. This diminution of value does not constitute a "taking," however, unless the State's legitimate exercise of its police power denies the owner all beneficial use of his property. *Department of Transportation v. Armacost, supra; State v. Good Samaritan Hospital,* 299 Md. 310, 473 A.2d 892 (1984); *Md.-Nat'l Cap. P. & P. Comm'n v. Chadwick, supra.*

In *Armacost* the Court of Appeals rejected a challenge to the recently enacted vehicle emissions inspection program on the ground that the enforcement mechanisms adopted by the General Assembly constituted a "taking" of a non-complying vehicle by the State in violation of substantive due process. Chief Judge Murphy speaking for the Court explained:

Both the fifth amendment to the United States Constitution and Article III, § 40 of the Constitution of Maryland prohibit the taking of private property for public use unless just compensation is paid to the owner. The fifth

amendment applies to the states through the fourteenth amendment. We have said that Supreme Court decisions interpreting the fifth amendment's just compensation requirement are practically direct authority for our interpretation of the parallel provision in the Constitution of Maryland. *King v. State Roads Comm'n of St. Hwy. Admin.*, 298 Md. 80, 83–84, 467 A.2d 1032 (1983). The standard for determining when a government regulation affecting the use of private property becomes a "taking" in the constitutional sense is well accepted.

> " 'If the owner affirmatively demonstrates that the legislature or administrative determination deprives him of all beneficial use of the property, the action will be held unconstitutional. But the restrictions imposed must be such that the property cannot be used for any reasonable purpose. It is not enough for the property owners to show that the ... action results in substantial loss or hardship.' "

*Governor v. Exxon Corp.*, 279 Md. 410, 437, 372 A.2d 237 (1977), *aff'd* 437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978), *quoting Baltimore City v. Borinsky*, 239 Md. 611, 622, 212 A.2d 508 (1965). *See also State v. Good Samaritan Hospital*, 299 Md. 310, 321, 473 A.2d 892 (1984); *Cider Barrel Mobile Home v. Eader*, 287 Md. 571, 580, 414 A.2d 1246 (1980); *Pitsenberger v. Pitsenberger*, 287 Md. 20, 34, 410 A.2d 1052 (1980), *appeal dismissed*, 449 U.S. 807, 101 S.Ct. 52, 66 L.Ed.2d 10 (1980); *Rockville v. Stone*, 271 Md. 655, 663–64, 319 A.2d 536 (1974).

*Armacost, supra* [299 Md.] at 420–21, 474 A.2d 191.

The noise zone regulations in issue in this case have not deprived the appellants of all reasonable uses of their land as there are a number of permitted uses for the property consistent with the State noise zone regulations and the Anne Arundel County zoning. Thus, fundamental attributes of ownership have not been extinguished and the State's interest in protecting the health and general welfare of the occupants of land near airports has been preserved. A weighing of public and private interests in this case

indicates that the enforcement of these regulations does not constitute a "taking" of the appellant's property. Therefore, no compensation is required.

JUDGMENT AFFIRMED;

COSTS TO BE PAID BY THE APPELLANTS.