221 Md. 329 (1960)
157 A.2d 433
MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.
v.
NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE ET AL.
[No. 87, September Term, 1959.]
Court of Appeals of Maryland.
Decided January 22, 1960.
The cause was argued before BRUNE, C.J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.
Marvin Mandel and Stanford H. Franklin, with whom were Mandel & Franklin, Harrison L. Winter, City Solicitor, Ambrose T. Hartman, Deputy City Solicitor, and James B. Murphy, Assistant City Solicitor, on the brief, for appellants.
Linwood G. Koger, Jr., and Charles J. Josey, with whom was Juanita J. Mitchell on the brief, for appellees.
HORNEY, J., delivered the opinion of the Court.
This is another zoning appeal. In this instance, when the Circuit Court No. 2 of Baltimore City declared Ordinance No. 1160 of the Mayor and City Council of Baltimore (the City)  approved December 19, 1957  null and void and enjoined the Schneider Bedding Company (Schneider) and others from utilizing the property rezoned by the ordinance for any use not permitted immediately prior "to the enactment of the ordinance," the City and Schneider appealed.
*332 Ordinance No. 1160 (the ordinance) purported to amend Sheet No. 45 of the Use District Map [Baltimore City Code (1950), Art. 40, entitled "Zoning," as revised by Ordinance No. 711, approved May 21, 1953], by changing the property known as 511-519 Wilson Street (the rezoned property), from a "Residential Use District" to a "Second Commercial Use District." While it was pending before the City Council, the ordinance, as required by law, was referred to the City Planning Commission (the Commission) and the Board of Municipal and Zoning Appeals (the Board) for their reports and recommendations. The Board recommended passage of the ordinance on the ground that the proposed change of use "could not adversely affect the neighboring properties." On the other hand, the Commission unanimously disapproved the ordinance on the ground that to allow a second commercial use in the residential use district in question "would not be to the best interest of the community and would be to the sole benefit of one property" and urged that "this spot use change" be not adopted. The City Council, after a hearing on the legislation, disregarded the recommendation of the Commission and adopted the report of the Board. The Mayor approved the ordinance passed by the Council.
Alleging damage to their respective properties and seeking declaratory and injunctive relief, this proceeding was instituted by a group of property owners in the neighborhood of the rezoned property as residents, citizens and taxpayers of the City of Baltimore. The National Association for the Advancement of Colored People (N.A.A.C.P.) and a residential protective association were also joined as parties in the bill of complaint. While it seems clear that these associations were not proper parties, no objection was raised below and we shall not consider it here since there are several parties plaintiff who are property owners. See Southland Hills Imp. Assn. v. Raine, 220 Md. 213, 151 A.2d 734 (1959).
The evidence shows that prior to the passage of the ordinance the rezoned property was subject to a lawful non-conforming use in a residential zone. It had been used as a repair shop and garage for the storage of trucks, gasoline and oil for over thirty years. Surrounding the rezoned property *333 there are a number of other non-conforming uses. In the same block as the rezoned property there is a coal yard, an automobile repair shop and a manufacturing plant, all of which are second commercial uses, and a laundry, a restaurant, a bar and a funeral home, which are first commercial uses. The entire frontage on the north end and south side of the 500 block of Wilson Street is 655 linear feet, of which 414 feet is used commercially. Since the original zoning, the Board [of Zoning Appeals] has permitted a change of non-conforming use and granted an exception with respect to 514-516 Wilson Street, which is directly opposite the rezoned property, and had been used as a photography school. Recently a special exception was granted to use the same premises as a plant for the processing, finishing and assembling of precision parts, which is a second commercial use. The property immediately to the rear of the rezoned property is zoned first commercial. Pennsylvania Avenue, approximately one block away, is entirely zoned for second commercial use.
In addition to the above undisputed facts, there was also testimony by real estate experts, on behalf of the city and Schneider, to the effect that the rezoning would not adversely affect the surrounding properties or cause deterioration of the neighborhood because the area was already heavily commercialized, and that any change in use would be an improvement since the rezoned property could not be used for residential purposes. But there was no evidence of error in the original zoning or of a substantial change in the character of the neighborhood since the original zoning other than the granting of the special exception. On the contrary, although they produced no expert witnesses, there was testimony by the protesting property owners to the effect that they had consistently endeavored to preserve the residential character of the neighborhood, that the rezoning would seriously affect the enjoyment and value of their properties for future residential use, and that the restricted and actual use within the residential use district  despite the existing non-conforming uses and the sole special exception  was still predominantly residential as it has always been since the inception of zoning in Baltimore City.
*334 The City and Schneider contend (i) that the lower court was without authority to substitute its judgment for that of the legislative body since the question of validity was fairly debatable and the protesting property owners had presented insufficient evidence to overcome the presumption of validity; (ii) that the property owners offered no proof that they had suffered special damages which differed in kind and character from that suffered by the public generally; and (iii) that it was error to admit into evidence the prior actions of administrative agencies not empowered by statute to zone or rezone.

(i)
The courts have long recognized the general rule that on a review of zoning and rezoning ordinances the function of the reviewing court is restricted and that such court may not substitute its judgment for that of the legislative body. On the contrary, whenever the validity of a zoning classification is fairly debatable, the legislative judgment should be controlling. Missouri Realty, Inc. v. Ramer, 216 Md. 442, 140 A.2d 655 (1958); Wakefield v. Kraft, 202 Md. 136, 96 A.2d 27 (1953); Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 388 (1926).[1] Moreover, there is a presumption in favor of the validity of the legislative enactment. Kroen v. Board of Zoning Appeals, 209 Md. 420, 426, 121 A.2d 181, 184 (1956); Wakefield v. Kraft, supra. But the presumption is stronger in original zoning or comprehensive rezoning cases than it is in instances of piecemeal rezoning. Missouri Realty, Inc. v. Ramer, supra.
While it is true that it is not the function of a court to zone or rezone but only to determine whether the legislative body has properly applied the law to the facts, it is, nevertheless, also true that when there is no basis for reasonable debate or there are no supporting facts in the record, a court can  and indeed it should  declare the legislative action to be arbitrary, capricious, discriminatory or illegal. Eckes v. Board of Zoning Appeals, 209 Md. 432, 437, 121 A.2d 249, *335 251 (1956); Wakefield v. Kraft, supra, at p. 142. It is commonplace to say that if there are no facts to support the action of the legislative body then there is no question to debate, but that is exactly the situation which confronts us in this case. There is, of course, a presumption that the rezoning was reasonable, but in piecemeal rezoning cases there is also a counter-presumption that the original zoning was well planned and designed to be reasonably permanent which may be overcome only by showing that either there was error in the original zoning or there has been change in the character of the neighborhood, and unless one or the other, or both, is shown the presumption of reasonableness is destroyed. Zang & Sons, Builders, Inc. v. Taylor, 203 Md. 628, 102 A.2d 723 (1954). See also American Oil Co. v. Miller, 204 Md. 32, 102 A.2d 727 (1954). Here  since there was no proof of a basis mistake or a substantial change  the question of the validity of the ordinance is not even debatable. We hold that the rezoning of the property in question was properly set aside by the lower court. And, since the rezoning ordinance was invalid, it follows that the injunction to restrain second commercial use of the premises was also proper. See Cassel v. City of Baltimore, 195 Md. 348, 353, 73 A.2d 486, 487 (1950).

(ii)
In answer to the second question presented it is not disputed that at least one of the plaintiffs was an adjacent property owner and as such was not only a proper party but had standing to attack the validity of the amending ordinance and to seek an injunction against the use of the property in question for any purpose other than that permitted immediately prior to the enactment of the rezoning ordinance. Cassel v. City of Baltimore, supra, at p. 353. Cf. Loughborough v. Rivermass, 213 Md. 239, 131 A.2d 461 (1957).

(iii)
The third question to the effect that it was error to admit into evidence prior actions of the Planning Commission and Board of Zoning Appeals because they were without power to zone or rezone is without merit in this case. The contention *336 is that the admission of such evidence "resulted in error prejudicial to the [a]ppellants," but they assigned no basis for the conclusion stated, and we see none. Furthermore, the record indicates that they acquiesced in the admission of the evidence for certain restricted purposes, one of which they now claim was not that for which the chancellor considered such actions, but it does not appear that the question was ever raised below and, in any event, it is immaterial now in the light of the ruling by this court on the principal question herein decided.
The decree of the chancellor will be affirmed.
Decree affirmed, the appellants to pay the costs.
NOTES
[1] Metzenbaum in his work on Zoning says that this was the first zoning case to reach the Supreme Court of the United States. 1 Metzenbaum, Law of Zoning, p. 57 (2d ed., 1955).